BEFORE THE SECOND DIVISION, NOVEMBER 10, 1954

**No. 58502.**—Charles F. Sormani and Alltransport, Inc. *v.* United States, protest 211081–K (New York).

RAO, Judge: This is an action to recover duties alleged to have been erroneously assessed upon an importation of articles invoiced as "Little Swiss Calendars 1952." The collector of customs at the port of New York classified these items as diaries and assessed duty thereon at the rate of 25 per centum ad valorem pursuant to the provision in paragraph 1410 of the Tariff Act of 1930 for blank books.[1] It is the claim of plaintiffs that the imported merchandise is provided for in paragraph 1406 of said act as lithographically printed calendars, of the thickness and cutting size carrying a rate of 12 cents per pound, to wit, "exceeding twelve and not exceeding twenty one-thousandths of one inch in thickness * * *; exceeding thirty-five square inches cutting size in dimensions, * * *."

A sample of the importation is in evidence as plaintiffs' exhibit 1. To all intents and appearances, it is a calendar booklet, approximately 5½ by 7 inches in size. There is a page for each month of the year, plus a cover page, all of which are joined together by a spiral clasp inserted through perforations across the top. A cord, which presumably has been slipped through this clasp, serves as a convenience in hanging. Upon the front side of each page, including the cover, is a

[1] It is to be noted that the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, which reduces the rate of duty on blank books and slate books from the 25 per centum rate provided in said paragraph 1410 to 12½ per centum, specifically excepts diaries.

lithographed scene, in color. In addition, all, except the cover, contain the customary monthly calendar tabulation. The reverse side of each page, starting with the cover, but not including the last leaf, bears the legend "Agenda Engagements" and the name of the month, printed in German, English, and French, to which the ensuing calendar tabulation relates. Below this, the page is divided by lines into 32 spaces, each approximately three-eighths of an inch by 2 inches in size, the spaces being numbered consecutively for the days of the month.

The record establishes that "Exhibit 1 is composed of paper lithographically printed in whole or in part from gelatin, metal, stone, or other material," and that "Exhibit 1 is not mounted and that the individual sheets contained in Exhibit 1 are over 12/1000ths and under 20/1000ths inches thick and have a cutting size of over 35 square inches and are neither die cut nor embossed."

It appears that the dispute between the parties as to the proper classification of the instant merchandise centers upon that portion of the exhibit which is hereinabove referred to as "the reverse side." In this connection, we quote the following statement of counsel:

MR. BLAUVELT: I think, your Honors, I can state, with the concurrence of Mr. Taylor, that the sole point of contention between the importer and the Government is the lines for notations on the back of each page. It was that feature of that article which is otherwise a calendar that led the Government to classify it as a diary.

Mr. TAYLOR: That is correct, your Honor. The space provided on the back of each page with a number and the space opposite the number is the basis of the classification.

Counsel for the plaintiffs contend that the imported articles are calendars, not rendered less so because space has been set aside for notations, and we are inclined to agree with this view.

The word "diary" is defined in Webster's New International Dictionary as:

A register of daily events or transactions; a daily record; journal; esp., a book for personal notes or memoranda, or for details of experiences or observations of the writer; also, a blank book for daily memoranda.

It seems almost too obvious for comment that a space of no greater size than three-eighths of an inch by 2 inches scarcely serves as a sufficient area for a register of daily events; a record of personal experiences or observation; or even a place for personal notes or memoranda. If it were possible to record more than a few scanty notations, or a reference to an engagement or two for the day, a handwriting of most microscopic dimensions would indeed be required. We are of opinion that no daily record which could be made on the sample before us would constitute a diary in the generally accepted sense of the term.

For the foregoing reasons, and in view of the established facts, we hold the merchandise here in question to be dutiable at the rate of 12 cents per pound within the provisions of paragraph 1406 of the Tariff Act of 1930 for—

* * * calendars, * * * composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material * * *, not specially provided for, * * * exceeding twelve and not exceeding twenty one-thousandths of one inch in thickness * * * exceeding thirty-five square inches cutting size in dimensions, * * *.

The claim in the protest to that effect is sustained.

Judgment will be entered accordingly.